UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BANG-ORN M. WILSON,<br><br>               Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>             Defendant. | No. CV- 13-127-JPH<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION  FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment. ECF No. 11, 13. The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the parties' briefs, the court **grants** defendant's motion for summary judgment, **ECF No. 13**.

### JURISDICTION

Wilson applied for disability insurance benefits (DIB) on March 25, 2010. She alleged onset as of June 25, 2007 (Tr. 163-69). Benefits were denied initially (Tr. 104-06, 109-11) and on reconsideration (Tr. 107-08, 117-18). ALJ R.J. Payne held hearings July 7, 2011 and October 14, 2011 (Tr. 43-53, 56-99) and issued an unfavorable decision on November 3, 2011 (Tr. 12-26 ). The Appeals Council denied review January 29, 2013 (Tr. 1-6). The matter is now before the Court

ORDER - 1

pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 27, 2013. ECF No. 1.

STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the parties' briefs. They are only briefly summarized here and as necessary to explain the court's decision.

Wilson was 41 years old at onset and 45 at the hearing. She attended school in Thailand and has a sixth grade education. She has not earned a GED. She has worked as a caregiver and chef. On June 25, 2007, Wilson was involved in a car accident that caused immediate neck pain. She alleges disability based on degenerative disc disease (DDD), and chronic pain in the neck, mid back, shoulder and left middle finger. She testified she can stand 10-15 minutes, sit 10-20 minutes, walk slowly for a quarter of a mile and lift no more than ten pounds. She experiences sleep problems due to pain and medication side effects (Tr. 25, 71-73, 75-81, 86-90, 93). On appeal Wilson alleges the ALJ should have found she is more limited.

SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established  a five-step sequential evaluation process or determining whether a person is disabled. 20 C.F.R. §§  404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§  404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment or combination of  impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§  404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. §404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress  has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

It is the role of the trier of fact, not this Court, to resolve conflicts in

evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

ALJ Payne found Wilson was insured through December 31, 2012 (Tr. 12, 14). At step one, he found she did not work at SGA levels after onset on June 25, 2007 (Tr. 14). At steps two and three, the ALJ found she suffers from degenerative disc disease and soft tissue sprains and strains of the cervical, thoracic and lumbar spine, impairments that are severe but do not meet or medically equal a listed impairment (Tr. 14-15). The ALJ found Wilson less than fully credible (Tr. 16). He found she is able to perform a range of light work (Tr. 15-16). At step four, the ALJ found Wilson is unable to perform any past relevant work (Tr. 25). At step five, the ALJ relied on the Grids (Medical Vocational Guidelines) as a framework and found Wilson was not disabled from onset through date of the decision, November 3, 2011 (Tr. 25-26).

**ISSUES**

**W**ilson alleges the ALJ failed to properly weigh the medical evidence and should have obtained a vocational expert's testimony at step five. ECF No. 11 at 2. She also appears to challenge the ALJ's negative credibility determination. The Commissioner responds that the ALJ applied the correct legal standards and the

ORDER - 5

decision is supported by substantial evidence. She asks the court to affirm. ECF No. 13 at 1-2.

## DISCUSSION

### A. Credibility

Wilson alleges the ALJ failed to include pain when he determined her residual functional capacity, meaning he erred when he found she is less than credible. ECF No. 15 at 3-4, 8-9, 15-18. The Commissioner answers that the ALJ's credibility determination is supported by clear and convincing evidence and free of harmful error. ECF No. 17 at 9-11.

To aid in weighing the conflicting medical evidence, the ALJ evaluated Wilson's credibility. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ's reasons are clear and convincing.

The ALJ relied in part on Wilson's activities and inconsistent statements when he found her less than credible. After onset Wilson traveled to Thailand, Boise and Montana. She spent a month in Texas, went fishing, and hiked for two hours, all activities that are inconsistent with allegedly disabling limitations. (Tr. 22, 92-93,548, 566, 913, 949, 1056, 1292, 1340, 1369). She failed to give maximum or consistent effort during testing, showing improved strength when

unaware of the testing (Tr. 946). She stated she considered selling her restaurant because her children were pursuing their own interests, she had hired two cooks and she was unable to work in the kitchen; elsewhere she indicated disability forced her to close her restaurant (*cf.* Tr. 564 *with* Tr. 632). She told a physical therapist it is too painful to reach behind her to attach a bra and her husband has to do it for her, but she was observed performing this task (Tr. 995). Wilson failed to comply with treatment without explanation (Tr. 913, 915, 917, 919, 921, 923, 925, 1054, 1133, 1162)  and exaggerated symptoms (Tr. 20, 22, 942, 946, 1055). These reasons are clear, convincing and supported by the record. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)(daily activities, lack of consistent treatment and lack of objective medical findings are factors the ALJ may properly consider, as long as lack of findings is not the sole basis); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(proper factors include inconsistencies in claimant's statements, inconsistencies between statements and conduct and failure to give maximum or consistent effort); and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (unexplained failure to comply with treatment diminishes credibility).

   *B. Weighing opinion evidence*

   Wilson alleges the ALJ erred when he weighed the medical evidence, resulting in error at step two and in the RFC assessment. She alleges the ALJ should have given more credit to the opinions of treating and examining sources and less to reviewing and testifying doctors. ECF No. 11 at 4-18. The Commissioner responds that the ALJ's reasons for failing to credit some of the contradicted opinions, particularly of Dr. Emery, are specific, legitimate and supported by substantial evidence. ECF No. 13 at 5-11.

   Wilson alleges the ALJ should have found her arm/hand impairment severe at step two. She describes this as parasthesias (numbness and tingling) and "right wrist and right thumb impairments" ECF No. 11 at 4-6. The Commissioner

ORDER - 7

answers that any step two error is harmless in this case because Wilson fails to show that finding a severe wrist impairment would alter the outcome of her claim. ECF No. 13 at 14-16.

In support of the argument, Wilson first cites three 2007 medical records (Tr. 379, 517, 679). In the first on July 6, 2007, treating doctor Mark Hoggan, M.D., notes a positive Tinel's on the right wrist (Tr. 679). A few weeks later evaluating neurologist J. Robert Clark, M.D., notes "parasthesias in the upper extremity with question of bilateral CTS as a consequence of the strain in the wrist and forearm." She has no symptoms which suggest radiculopathy in the arms or legs (Tr. 379). In November 2007 a physical therapist notes decreased grip strength in the left hand, as the ALJ observed (Tr. 21, 517). The ALJ points out that in September 2007, examining doctor Kurt Anderson, M.D., found no provocative signs for either cubital tunnel or carpal tunnel symptoms on either extremity, and ordered a full neurological workup (Tr. 21, 413). The subsequent EMG was normal (Tr. 416). On January 8, 2008, Tinel's was negative (Tr. 806). In June 2008 Wilson reported her left wrist did not affect her activities of daily living (Tr. 21, 285).

Wilson then cites four 2008 records. ECF No. 11 at 5-6; Tr. 619-20, 806, 827, 857. The first, January 8, 2008 is by examiner Jennifer Ballard, ARNP [Plaintiff mistakenly attributes it to Dr. Emery]. Ballard found Wilson demonstrates bilateral thumb abductor strength weakness and "severe perceived disability." Ballard observes two prior EMG/NCS tests in both upper extremities were negative for any neurological abnormalities (Tr. 806). On April 8, 2008, treating chiropractor Paul Alder, D.C., notes paraspinal studies that day showed "malpositions and moderate pain in left wrist [and] moderate hypertonicity and moderate pain of the right wrist" (Tr. 619-20). The ALJ was not required to credit an opinion based on plaintiff's unreliable self-reporting. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). On July 29, 2008, treating Dr. Long noted that,

after injecting a thoracic facet joint block, Wilson "still has mid back pain as well as numbness in both hands and all [of her fingers]" (Tr. 827). This note appears to be based on her self-report. November 19, 2008, treating Dr. Steven Goodman, M.D., [mistakenly attributed to Dr. Emery] diagnosed right forearm and wrist strain (Tr. 857).

Next, Wilson cites a 2009 note by Dr. Dibble, who "assessed right carpal tunnel symptoms." ECF No. 11 at 6, referring to Tr. 1103. The ALJ was not required to credit unreliable self-reported symptoms. Wilson then cites the ME's testimony that "Plaintiff exhibited inflammation in the right thumb, narrowing of the deep core veins in the right thumb, and tendinitis of the base of the thumb area, but did not assess any right hand limitations." ECF No. 11 at 6, citing Tr. 63, 65. Wilson seems to imply that if one has a condition it must cause limitations, but that was not what the ME found. Last, she cites treating Dr. Emery's 2011 opinion that Wilson has grasping and fine manipulation limitations in both hands. ECF No. 11 at 6, citing Tr. 1459.

The ALJ rejected some of Dr. Emery's contradicted opinions for specific and legitimate reasons supported by substantial evidence. The ALJ notes Dr. Emery's 2011 RFC for less than sedentary work is not corroborated by Emery's own minimal findings, nor by the minimal findings of other providers (Tr. 24). As an example the ALJ notes physical therapy substantially improved Wilson's strains in a short period of time. In September 2007 a physical therapist reported cervical spine range of motion was 90% of normal for rotation and flexion and 25% limited in extension. By November 2007, Wilson reported parasthesias in the upper extremities had resolved (Tr. 19, 511).

The ALJ specifically credited the opinions of treating doctor Mark Hoggan, M.D., and Captain Glenn Little, PA, at Fairchild Airforce Base. They consistently released Wilson without any restrictions (Tr. 24, 669, 672-73, 680, 683) and noted

ORDER - 9

"good exercise habits" (Tr. 677). This is consistent with Wilson's report on April 21, 2010 that she walks on a treadmill for exercise (Tr. 241).

Dr. Emery's 2011 RFC assesses extreme limitations. Standing is limited to five minutes, sitting to ten minutes (Tr. 1457). The ALJ notes the RFC for less than sedentary work is contradicted by Dr. Emery's own records (Tr. 24). Immediately after the car accident Dr. Emery limited Wilson to light duty work with no heavy lifting. Thereafter, he consistently opined she was capable of this level of work, with the exception of suggesting she should be off work for two months in January 2008. Dr. Emery notes range of motion limitations were due to pain. No clinical findings corroborate the limited range of motion. In June 2009, Dr. Emery encouraged Wilson to get aerobic exercise four to five days a week, as tolerated (Tr. 24, 565. 567, 569, 1067 ). The ALJ properly rejected this opinion because it is contradicted by most of the medical evidence, inconsistent with Wilson's reported activities, inconsistent with Emery's other records and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 99th Cir. 2005).

The ALJ properly found Wilson's right wrist and thumb impairments, and parasthesias, are not severe.

*C. New evidence accepted by the Appeals Council*

Kathleen Meyer, M.D., saw Wilson October 27, 2011, more than three months after the hearing and shortly before the ALJ's November 3, 2011 decision (Tr. 1475). She complained, in part, of occasional right wrist pain. After reviewing a September MRI and examining Wilson, Dr. Meyer offered treatment options of surgery at the C5/6 level or nerve block injections. Wilson opted for the injection (Tr. 1476).

The ALJ accepts the new evidence as part of the record, but finds that Dr. Meyer's report and the September 2011 MRI do not change the result. Plaintiff retains the remedy of filing a new application.

ORDER - 10

*D. RFC assessment*

In the residual functional capacity assessment, the ALJ included the ability to frequently reach in all directions above shoulder height with the right arm, and to frequently kneel and crawl (Tr. 15). Wilson alleges the ALJ relied on the testifying expert and a reviewing agency consultant in reaching this determination. She alleges this was error, because if the ALJ had properly given more credit to treating and examining sources, he would have found she is more physically limited. This simply recasts the allegation that the ALJ erred when he weighed the evidence.

The ALJ's reasons for rejecting more dire limitations are specific, legitimate and supported by substantial evidence.

*E. Step five*

Wilson alleges the ALJ erred at step five by relying on the Grids as a framework instead of a vocational expert, despite the presence of significant nonexertional limitations. ECF No. 11 at 18-20. The Commissioner answers that there was no error because the assessed non-exertional limitations did not significantly erode the occupational base. ECF No. 13 at 11-14.

The Commissioner is correct. The ALJ's limitations of occasional balancing, stooping and crouching, as well as frequent kneeling and crawling do not substantially affect sedentary and light levels of work. SSR 83-14. Nor does the need to avoid concentrated exposure to vibration and hazards. SSR-15. The ALJ was not required to obtain a VE's testimony in this case.

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment, **ECF No. 13**, is **granted.**

ORDER - 11

2. Plaintiff's motion for summary judgment, ECF No. 11, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** the file.

DATED this 28th day of March, 2014.

<u>*s/James P. Hutton*</u>

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE

ORDER - 12